## DASHIELL *v.* TASKER.

PATENTS; INTERFERENCE; BURDEN OF PROOF; DILIGENCE; REDUCTION TO PRACTICE; TESTS; UNSUCCESSFUL EXPERIMENTS; BREECH MECHANISM.

1. In an interference between an applicant and a prior patentee, the date of the filing of the latter's application, in the absence of proof on his part to show an earlier date of conception and

reduction to practice, must be taken as his date of conception, disclosure and constructive reduction to practice, the patent standing as proof of those facts.

2. Where one of the parties to an interference has obtained a patent prior to the filing of his opponent's application, that fact imposes upon the latter the burden of proof to establish his allegation of priority of invention beyond a reasonable doubt.

3. In an interference case, an application to countervail a patent already granted, must be shown to have been made within a reasonable time from the date of reduction to practice, or from conception of the invention, with the exercise of reasonable diligence to reduce to practice, or otherwise the claim to the invention as opposed to that covered by the patent will be rejected.

4. In an interference involving an improvement in breech-loading ordnance, between an applicant and a prior patentee, where it was conceded that the applicant was the first to conceive the invention, and the questions were as to prior construction and reduction to practical use, it appeared that Government officers subjected a gun embodying the applicant's breech-loading mechanism to a preliminary test not under conditions of actual service and found the result sufficiently satisfactory to warrant sending the gun to the proving-grounds for a complete test, and there, after a test, a memorandum was made by the officers of defects in the firing mechanism and other parts of the breech mechanism, but nothing said as to the extractor. No more tests were made and no more guns embodying the invention were constructed and there was no recommendation by the officers that the invention be adopted. The last test was made about eight months after the patent was granted to the patentee. The applicant had his extractor mechanism fixed in the gun two years before he filed his application, which was not until after the issue of the patent to his rival. *Held,* that the applicant had not reduced his invention to practical use but that his efforts amounted to nothing more than unsuccessful experiments.

5. A breech mechanism for a rapid-firing gun belongs to that class of devices, all parts of which must be shown to be functional properly under rigorous and exact requirements of actual service before the mechanism can be said to be adapted to and perfected for practical use.

No. 211.  Patent Appeals.    Submitted November 14, 1902.    Decided January 20, 1903.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.        *Affirmed.*

The COURT in the opinion stated the case as follows:

This is an appeal from the Patent Office, from a decision of the Commissioner of Patents, rendered in a matter of interference between the application of Robert B. Dashiell, filed May 27, 1898, and the patent issued to Vernon C. Tasker, February 22, 1898, on an application filed November 17, 1897. The subject-matter of the interfering claims is an improvement in breech-loading ordnance. The issue of the interference is framed in two counts, as follows:

"1. The combination of a breech-loading gun, having a suitably shaped slot cut through its wall with a cartridge-case extractor mounted in said slot and adapted to make continuously-shifting contact with the front of said slot, whereby a continuously-shifting pivot is secured, and means for pressing forward against the outer portion of said extractor.

"2. The combination of a breech-loading gun having a slot cut through its wall with a cartridge-case extractor mounted in said slot and adapted to make rolling contact with the front of said slot, and means for pressing forward against the outer portion of said extractor, the front of said slot being of such shape that the fulcrum-point of the extractor moves continuously outward and rearward during the operation of extracting the cartridge-case."

The case has been very fully and carefully examined and discussed in the Patent Office by the several tribunals there; and while there has not been entire unanimity of opinion, there has been entire concurrence of opinion of the board of examiners-in-chief and the Commissioner of Patents in awarding priority of invention to Tasker, the patentee. The examiner of interferences, in quite an elaborate opinion, concluded that Dashiell was entitled to priority, but on appeal to the examiners-in-chief that opinion was reversed; and on appeal by Dashiell to the then Commissioner in person, Duell, the opinion of the examiners-in-chief was affirmed. Subsequently upon motion of Dashiell, the interference was opened to let in new evidence; and after such new evidence was produced the case was heard *de novo;* and upon this second

hearing the examiner of interferences, upon careful review of the evidence, was led to his former conclusion, and held Dashiell to be entitled to priority of invention. Upon appeal by Tasker this opinion was reversed by the examiners-in-chief, that board holding, as they had formerly done, that Tasker was entitled to priority of invention. Dashiell appealed to the present Commissioner, Allen, and he affirmed the opinion of the examiners-in-chief. All the several opinions delivered were founded upon full and careful examination of the evidence. From the opinion of the Commissioner, Dashiell, or rather his executrix, has appealed to this court.

*Mr. W. H. Singleton* for the appellant.

*Mr. Ernest Wilkinson* and *Mr. S. T. Fisher* for the appellee.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

The appellant has assigned several grounds for the appeal:
1st. That the Commissioner erred in awarding priority to Tasker.
2d. That the Commissioner erred in not holding that Dashiell proved reduction to practice prior to Tasker's filing date.
3d. That the Commissioner erred in not holding that the test of the gun at Watervliet was a reduction to practice.
4th. That the Commissioner erred in not holding that the test of the gun at Sandy Hook was a reduction to practice.
5th. That the Commissioner erred in not holding that the operation of the gun at Ballauf's shop was a reduction to practice.
As we have stated, Tasker's date of filing his application is November 17, 1897, and as he has offered no proof upon the subject to show an earlier date of conception and reduction to practice, that date must be taken as his date of conception, disclosure, and constructive reduction to practice —

the patent standing as proof of those facts. The question then is, did Dashiell make the completed invention of the issue before that date?

Tasker relies upon his patent and the commercial success of his invention, and he contends that Dashiell's alleged reduction to practice of his invention was a mere unsuccessful experiment, since abandoned; that the experiment was not completed until long after he, Tasker, had filed his application; and finally, that Dashiell was guilty of laches, and by his own acts forfeited any right that he might have had in the invention.

Tasker having obtained a patent for the alleged invention prior to the filing of the application by Dashiell, that fact imposed upon the latter the burden of proof to establish the allegation of priority of invention by himself beyond reasonable doubt. A patent cannot be overcome by any less degree of certainty in proof. And moreover, the application to countervail the patent, must be made within a reasonable time from the time of the reduction to practice, or from conception of the invention with the exercise of reasonable diligence to reduce to practice, or otherwise the claim to the invention as opposed to that covered by the patent will be rejected. In this case, therefore, it is incumbent upon Dashiell, or his representative, to establish not only priority of invention beyond reasonable doubt, but that his application was made to the Patent Office within a reasonable time, from the time when he alleges the invention was reduced to practical use, as shown by experimental tests.

It may be conceded that Dashiell was entitled to priority of conception; but the questions of prior construction and reduction to practical use, are the questions of real contest and importance in this case. There has been considerable evidence produced reflecting upon these latter questions, but it is difficult to discover in the evidence produced on the part of Dashiell any such well-established facts as make it clear beyond reasonable doubt that his repeated efforts to reduce his conception to practical use resulted in anything more than unsuccessful experiments. Putting the most fa-

vorable construction upon the evidence, it fails to remove all reasonable doubt upon these important questions.

The gun to which the breech-loading mechanism is adapted was made by and belongs to the Government of the United States, and the latter allowed the gun to be used and converted in order to test the value of the supposed invention, and if successful to make a distinct type of rapid-firing ordnance. But after all the tests that were made it does not appear that the Government has made any use of the gun; nor does it appear that the alleged improvement was ever applied to more than the one gun. The experimental tests were made at considerable intervals, and after changes and alterations were made in the breech mechanism. These tests were made during the years 1896, 1897, and 1898. There were sufficient time and opportunity afforded certainly for the ordnance officers of the Government, under whose direction and supervision the final tests were made at the Government proving-grounds, to approve and accept the breech mechanism as a valuable improvement in breech-loading guns; but no such thing appears to have been done. There is not even a certificate or memorandum made by those officers that the tests were satisfactory, and the invention a valuable improvement in breech-loading guns — evidence, in the absence of those officers as witnesses, that would have been most material and important on the question of reduction to practice.

As we have stated, the application of Tasker was filed November 17, 1897; and the patent was granted thereon February 22, 1898. But it appears that tests were being made of the gun with Dashiell's breech mechanism as late as October 20, 1898. The facts relating to the tests to which the breech mechanism of the gun was subject, both at the Watervliet arsenal and at the Sandy Hook proving-grounds, are well stated in the opinion of the examiners-in-chief, and those facts show that there was no such satisfactory reduction to practice of the invention by Dashiell as would justify a declaration of priority in his favor, as against the patent of Tasker.

In their opinion, the examiners-in-chief say, and they refer to the record for the proof of what they do say:

" It thus appears that this Watervliet test was only a preliminary test and was not made under the conditions of actual service use and under conditions which would satisfactorily show that the mechanism as then constructed would successfully operate to perform its desired functions.

"After these six rounds had been fired at Watervliet, the gun was sent to the Sandy Hook proving-grounds, where it was fired a number of times. Some difficulty was found with the firing mechanism, and the breech mechanism was sent to the Watervliet arsenal on August 18, 1896, in order that changes might be made therein. A further test was made of the gun, and after round eighty-nine on September 25, 1896, the breech mechanism was found to be defective, and it was sent to the American Ordnance Company for repairs and alterations.

" While in Ballauf's shop a whole new firing mechanism was put in under Dashiell's directions, but some changes were also made in the cam which operates the extractor to give a quicker movement thereto after the shell is released from the chamber of the gun. After this change had been made the breech mechanism was operated with an empty shell, and Schneider, a model-maker, testifies as follows:

" ' Q. 19. How did the various parts of the gun act when it was operated with an empty shell ?

" ' A. It worked very well to the satisfaction of Mr. Dashiell.

" ' Q. 20. When the breech-block was opened what happened to the empty shell ?

" ' A. The empty shell was thrown out.

" ' Q. 21. Have you any idea how many times the gun was thus manipulated ?

" ' A. I suppose a couple of hundred times.'

" The gun was again sent to Sandy Hook and the last record is the firing of ten rounds on October 20, 1898, which are referred to in the memoranda as ' Object of firing: Test of Dashiell breech mechanism.' This is the last entry in the

memoranda.   So that as late as October 20, 1898, the breech mechanism as a whole still needed to be tested.  And throughout the whole of these memoranda there is admittedly no reference to the extracting mechanism or tests thereof."

It is contended, however, on the part of Dashiell, that the tests at the Watervliet arsenal were of themselves sufficient to show a reduction to practice, and that the memoranda from the Sandy Hook proving-grounds were also sufficient to prove that the extractor feature involved in the issue was satisfactorily reduced to practice at Sandy Hook, notwithstanding that there is no mention or reference in the memoranda to the extracting mechanism or tests thereof.   But to this contention we do not agree.

In the first place, if the tests at Watervliet were sufficient to show a reduction to practical use of the invention, there would have been no use or necessity for sending the gun to the Sandy Hook proving-ground for further tests.   But it is made very manifest from the results of the tests to which the breech mechanism of the gun was subject at the Sandy Hook proving-grounds that no previous tests thereof were sufficient.   As is well said in the opinion of the examiners-in-chief, in a breech mechanism for a rapid-firing gun it must be shown that all the parts were functional properly under rigorous and exact requirements of actual service, before the mechanism can be said to be adapted and perfected for practical use.   The Sandy Hook tests, however, developed the fact that the firing mechanism was in reality worthless and had to be entirely replaced.   This in connection with the fact that there is no evidence whatever of any direct character to show that the extractor mechanism operated satisfactorily, precludes any rational presumption that the extractor mechanism would or could operate satisfactorily under such condition.   The appellant attempts to support his contention as to the sufficiency of his proof by urging that as the notes or memoranda made of the tests of the mechanism at the Sandy Hook proving-grounds refer to defects in other parts of the breech mechanism, but are silent as to the working of the extractor mechanism, we should

conclude that the extractor mechanism was found to work in a satisfactory manner. But such inference is clearly not admissible. If so important a part of the structure as the firing mechanism was found to be so defective or imperfect as not to operate upon fair tests, it might well have been deemed unnecessary to attempt to subject to tests the extracting device of the empty shell after firing.

The gun with the breech mechanism was produced in court at the argument of the case, but such exhibit of the working of the mechanism, and particularly of the shell extractor, as could be made here, afforded but slight aid in considering the case upon the evidence contained in the record.

There is evidence in the record to show that Dashiell himself was not entirely satisfied with the working of the mechanism after it had been subjected to tests. This fact may, to some extent, explain his delay in making application to the Patent Office. For though he had his extractor mechanism fixed in the gun in the early part of the year 1896, he did not file his application until May, 1898, not until some time after the issue of the patent to Tasker. This fact tends to furnish a strong ground for the contention, on the part of Tasker, that the repeated attempts by Dashiell to reduce his conception to practice never amounted to more than unsuccessful experiments.

We are very clearly of opinion that the decision of the Commissioner, from which this appeal was taken, was correct, and must therefore be affirmed; and the case, and this opinion, will be certified to the Commissioner of Patents, according to law; and it is so ordered.            *Affirmed.*